Hughes v. JBS Ventures, LLC, 2026 NCBC 9.

STATE OF NORTH CAROLINA

GASTON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CVS000529-350

WILLIAM R. HUGHES,

          Plaintiff,

v.

JBS VENTURES, LLC; THE
ESTATE OF JOSEPH LENIHAN, by
and through its executor James
Martin Lenihan; JOSEPH EDWARD
LENIHAN REVOCABLE TRUST
dated May 1, 2019, by and through
its Trustee, Erik M. Rosenwood;
ROSENWOOD, ROSE & LITWAK,
PLLC; and CELTIC THREADS, LLC,

          Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS**

1.　　**THIS MATTER** is before the Court on Defendants JBS Ventures, LLC ("JBS"), The Estate of Joseph Lenihan by and through its executor James Martin Lenihan (the "Estate"), Joseph Edward Lenihan Revocable Trust dated May 1, 2019, by and through its trustee Erik M. Rosenwood (the "Trust," "Rosenwood" or "Trustee"),  Rosenwood Rose & Litwak PLLC (the "Firm"), and Celtic Threads LLC's ("Celtic") (collectively, the "Defendants") Motion for Judgment on the Pleadings (the "Motion"), filed pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure (the "Rule(s)").[1]

---

[1] (Def.'s Mot. J. Pleadings [hereinafter "Mot."], ECF No. 20.)

2. Having considered the Motion, the parties' briefs in support of and in opposition to the Motion, the relevant pleadings, the arguments of counsel, and other appropriate matters of record, the Court hereby **GRANTS** the Motion.

*Gray, Layton, Kersh, Solomon, Furr & Smith, P.A., by Michael L. Carpenter and Kayla N. Butler, for Plaintiff William H. Hughes.*

*Rossabi Law PLLC, by Amiel J. Rossabi, for Defendant Celtic Threads LLC.*

*Rosenwood, Rose & Litwak, PLLC, by Carl J. Burchette, for Defendant Rosenwood, Rose & Litwak, PLLC.*

*Poyner Spruill LLP, by John Michael Durnovich and Thomas L. Ogburn, for Defendants Joseph Edward Lenihan Revocable Trust Dated May 1, 2019, Estate of Joseph Lenihan, and JBS Ventures LLC.*

Brown, Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

3. The Court does not make findings of fact when ruling on a motion for judgment on the pleadings under Rule 12(c) and instead recites only those allegations in the pleadings that are relevant and necessary to the Court's determination of the motion.

4. Plaintiff William R. Hughes ("Plaintiff" or "Hughes") is a resident of San Clemente, California.[2] Plaintiff has conducted business in Gaston County, North Carolina, including the events at issue in the case.[3] Defendant JBS is a Georgia

---

[2] (Amended Complaint [hereinafter "Am. Compl."] ¶ 1, ECF No. 16.)

[3] (Am. Compl. ¶ 1.)

Limited Liability Company with its principal place of business located in Gastonia, North Carolina.[4] Defendant Estate, sued by and through its executor James Martin Lenihan, is by operation of law a resident of North Carolina as Joseph Edward Lenihan's ("Lenihan") last residence prior to his death in February 2023 was in Gastonia, North Carolina, and the Estate is currently in probate in Gaston County, North Carolina.[5] Executor James Martin Lenihan is a resident of California, and he has agreed to and subjected himself to jurisdiction in the courts of North Carolina.[6] Defendant Trust, sued by and through its trustee Erik M. Rosenwood, is a trust with its principal place of business in Gaston County, North Carolina.[7] Trustee Rosenwood is a resident of Mecklenburg County, North Carolina.[8] Defendant Firm is a North Carolina Professional Limited Liability Company conducting business in North Carolina with its registered agent located in Mecklenburg County, North Carolina.[9] Defendant Celtic is a North Carolina Limited Liability Company conducting business in North Carolina with its registered agent located in Mecklenburg County, North Carolina.[10]

---

[4] (Am. Compl. ¶ 2.)

[5] (Am. Compl. ¶ 3.)

[6] (Am. Compl. ¶ 3.)

[7] (Am. Compl. ¶ 4.)

[8] (Am. Compl. ¶ 4.)

[9] (Am. Compl. ¶ 5.)

[10] (Am. Compl. ¶ 6.)

5.    On or about 6 March 2008, JBS was formed in connection with The Loray Mill, "a large-scale urban revitalization and historic preservation project located in Gastonia, North Carolina."[11]  JBS' initial members included Lenihan, individually, and Hughes Bi-Coastal, LLC, an entity owned by Plaintiff.[12]  In 2012, Lenihan became the sole owner and Manager of JBS once Hughes Bi-Coastal was removed as a member of JBS.[13]

6.    In June 2013, JBS entered into a Second Amended and Restated Operating Agreement ("Second Operating Agreement"), which stated that Plaintiff would acquire a 23% membership interest in JBS as follows:

> In consideration of the issuance by Company of his Membership Interest, Hughes shall contribute $5,000 in cash to the Company which Capital Contribution shall be made at the rate of $1,000 per month commencing July 1, 2013 and continuing the first day of each month thereafter through and including November 1, 2013. If Hughes fails to make any installment payment of his Capital Contribution, then his Membership Interest shall automatically be redeemed by the Company without the payment of any consideration therefor and without any further action on behalf of either Hughes or the Company.[14]

---

[11] (Am. Compl. ¶¶ 13, 14, 17.)

[12] (Am. Compl. ¶ 13.)

[13] (Am. Compl. ¶ 17; *see also* Ex. 1 – Manager's Certificate, ECF No. 19.1.)

[14] (Ex 2. – Second Amended and Restated Operating Agreement of JBS Ventures, LLC [hereinafter "Second Operating Agreement"] art. 3, sec 3.2, ECF No. 19.2.)  The Second Operating Agreement contains a choice-of-law provision, which states that it "shall be governed by and construed in accordance with the laws of the State of Georgia."  (Second Operating Agreement art. 15, sec 15.12.)

7.      Plaintiff did not make a $5,000 *in cash* capital contribution to JBS in 2013 as required by the Second Operating Agreement.[15]  Plaintiff alleges, instead, that Lenihan represented that "$1,000 per month would be and, upon information and belief was paid and 'taken off the top' of every month's distribution allocations to Plaintiff from JBS from July through November 2013."[16]

8.      Plaintiff was a JBS employee in 2012 and 2013 and was compensated accordingly for his time.[17]  From 2014 to 2019, Plaintiff was treated as a Member of JBS, paid a salary from JBS, and issued K-1s from JBS, under JBS' mistaken belief that Plaintiff had actually made his $5,000 in cash capital contribution to JBS.[18]

9.      Plaintiff alleges that "[i]n April of 2019, Lenihan abused his position as majority Member and Manager of JBS to falsely assert that Plaintiff failed to make the required capital contribution and thus was not a Member of JBS" and that "Lenihan was aware that this assertion that Plaintiff failed to make the required capital contribution was false and intentionally misrepresented the facts in order to wrongfully reclaim Plaintiff's 23% interest in JBS."[19]

10.     JBS admits that Lenihan notified Plaintiff of its position in April 2019.  By letter dated 15 April 2019, JBS formally notified Plaintiff that he possessed a 0%

---

[15] (JBS' Answer to Am. Compl. [hereinafter "Answer"] ¶ 20, ECF No. 19.)

[16] (Am. Compl. ¶ 23.)

[17] (Answer ¶ 18.)

[18] (Answer ¶¶ 28–29.)

[19] (Am. Compl. ¶ 88.)

membership interest in JBS because Plaintiff had never made the required $5,000 in cash capital contribution per section 3.2 of the Second Operating Agreement.[20] By email to JBS' counsel on 14 May 2019, Plaintiff's attorney, Will Esser, acknowledged receipt of the April 15 letter and replied that Plaintiff "disagrees with numerous contentions and assertions" put forward by Lenihan, and suggested that the parties "do mutual releases and sever all remaining business ties . . . so that they can each move on."[21]

11. Subsequently, Lenihan, as the sole owner of JBS, transferred a 12.5% interest in JBS to Celtic in connection with a 9 May 2019 settlement concerning the Loray Mill project.[22] On or about 26 August 2022, JBS sold the Loray Mill project.[23] In November 2022, in connection with another Loray Mill project lawsuit, this Court ordered that slightly over $6 million in proceeds from the sale of the project be retained in the trust account of the Firm until further ordered by the Court.[24]

12. Lenihan passed away on or about 18 February 2023, and his son, James Martin Lenihan, was appointed Executor of his Estate.[25] The Estate has continued to fulfill its duties as Manager of JBS to manage the affairs of JBS, wind down the

---

[20] (Ex. 3 – 4/15/2019 Letter to Hughes [hereinafter "Letter to Hughes"], ECF No. 19.3.)

[21] (Ex. 5 – 5/14/2019 Hughes Email [hereinafter "Hughes Email"], ECF No. 19.5.)

[22] (Answer ¶ 46.)

[23] (Am. Compl. ¶ 37.)

[24] (Am. Compl. ¶ 38.)

[25] (Answer ¶ 50.)

Loray entities, pay accountants to file taxes, make requisite filings, and take related actions.[26]

13. On or about 7 September 2023, Plaintiff's counsel contacted JBS' counsel and claimed that Plaintiff was a member of JBS and was entitled to a share of the proceeds from the $6 million sale of the Loray Mill project.[27] On or about 15 September 2023, JBS and the Estate filed a prior suit against Plaintiff in Gaston County Superior Court seeking a judicial declaration on whether Plaintiff had any legal interest in JBS.[28] Plaintiff's counsel, however, declined to accept service of the lawsuit, and Plaintiff did not take any actions to validate his claims for ownership of or membership in JBS.[29] On or around 9 July 2024, the prior Gaston County lawsuit filed by JBS and the Estate was voluntarily dismissed without prejudice with no further resolution.[30]

14. On 5 February 2025, Plaintiff filed the present lawsuit in Gaston County Superior Court seeking a declaratory judgment against all named defendants, a constructive trust as to the escrow funds, and the judicial dissolution of JBS under Georgia law.[31] On 18 June 2025, Plaintiff filed an Amended Complaint that added a

---

[26] (Answer ¶ 53.)

[27] (Answer ¶ 41; Ex 6. – 9/7/2023 Hughes Email, ECF No. 19.6.)

[28] (Answer ¶ 41.)

[29] (Answer ¶ 41.)

[30] (Am. Compl. ¶ 57.)

[31] (Compl. ¶¶ 62–78, ECF No. 3.)

claim for "breach of fiduciary duty/constructive fraud."[32] In the new claim and for the first time, Plaintiff alleged that in April 2019, Lenihan falsely asserted and intentionally misrepresented "that Plaintiff failed to make the required [$5,000 in cash] capital contribution and thus was not a Member of JBS . . . in order to wrongfully reclaim Plaintiff's 23% interest in JBS."[33]

15.     Defendants filed the current Motion on 21 July 2025, and, after full briefing, the Court held a hearing on the Motion on 9 October 2025 at which Plaintiff and Defendants were represented by counsel.  The Motion is now ripe for resolution.

II.

LEGAL STANDARD

16.     Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." N.C. R. Civ. P. 12(c).  Rule 12(c) is intended "to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit and is appropriately employed where all the material allegations of fact are admitted in the pleadings and only questions of law remain." *DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, 376 N.C. 63, 70 (2020) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974)).

17.     However, "[g]ranting judgment on the pleadings 'is not favored by law[.]'" *Bauman v. Pasquotank Cnty. ABC Bd.*, 270 N.C. App. 640, 642 (2020) (quoting *Carpenter v. Carpenter*, 189 N.C. App. 755, 762 (2008)).  Thus, in deciding whether to

---

[32] (Am. Compl. ¶¶ 84–96.)

[33] (Am. Compl. ¶ 88.)

grant a motion for judgment on the pleadings, "the trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party, with all well pleaded factual allegations in the nonmoving party's pleadings being taken as true and all contravening assertions in the movant's pleadings being taken as false." *Anderson Creek Partners, L.P. v. Cnty. of Harnett*, 382 N.C. 1, 12 (2022) (internal quotations omitted).

18.    Under Rule 12(c), the trial court may consider "[a]n exhibit, attached to and made a part of the [complaint]," *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 206 (1970), and documents that are "the subject of the action and specifically referenced in the complaint," *Erie Ins. Exch. v. Builders Mut. Ins. Co.*, 227 N.C. App. 238, 242 (2013).  Where a document is attached to a pleading, "[t]he terms of such exhibit control other allegations of the pleading attempting to paraphrase or construe the exhibit, insofar as these are inconsistent with its terms." *Wilson*, 276 N.C. at 206.

19.    "The party moving for judgment on the pleadings must show that no material issue of fact exists and that he is entitled to judgment as a matter of law." *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 682 (1987).  Moreover, a "motion under Rule 12(c) must be carefully scrutinized lest the nonmoving party be precluded from a full and fair hearing on the merits." *Newman v. Stepp*, 376 N.C. 300, 305 (2020) (citation and internal quotation marks omitted).

III.

ANALYSIS

20. Through their Motion, Defendants seek dismissal of all of Plaintiff's claims pursuant to Rule 12(c).[34] Defendants contend that all of Plaintiff's claims accrued, at the latest, in April 2019; that Plaintiff commenced this lawsuit nearly six years later on 5 February 2025; and that Plaintiff's claims, which in substance assert membership rights under the JBS Second Operating Agreement, are subject to the three-year statute of limitations for contract actions and therefore barred. Defendants also contend that Plaintiff's claims sounding in tort are barred by the economic loss doctrine. The Court will take up each claim in turn.

21. Our Supreme Court recently affirmed that "North Carolina has long recognized that a plaintiff must initiate an action within the statutorily prescribed period to avoid dismissal of his claim. These statutes of limitations strike a balance between one party's right to assert a claim and another party's right to be free from a stale claim." *Taylor v. Bank of Am., N.A.*, 385 N.C. 783, 784 (2024). The Court further observed that a statute of limitations generally runs inexorably from the moment a plaintiff is injured, that "'[a]s soon as the injury becomes apparent to the [plaintiff] or should reasonably become apparent, the cause of action is complete and the limitation period begins to run,'" and that "statutes of limitations operate inflexibly and without reference to the merits of a cause of action." *Id.* at 788–89, 791 (internal citations omitted).

---

[34] (Mot. 1.)

22. In North Carolina, "[o]nce a defendant raises a statute of limitations defense, the burden of showing that the action was instituted within the prescribed period is on the plaintiff. A plaintiff sustains this burden by showing that the relevant statute of limitations has not expired." *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133, 136 (1996) (internal citations omitted). "'A judgment on the pleadings in favor of a defendant who asserts the statute of limitations as a bar is proper when, and only when, all the facts necessary to establish the limitation are alleged or admitted.' In such an instance, the plaintiff bears the burden of showing that her claim is not barred on the face of the complaint." *Groves v. Cmty. Hous. Corp.*, 144 N.C. App. 79, 87 (2001) (internal citations omitted).

Declaratory Judgment Against All Named Defendants

23. As an initial matter, the Court notes that North Carolina's "traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum." *Boudreau v. Baughman*, 322 N.C. 331, 335 (1988). "Ordinary statutes of limitation are clearly procedural, affecting only the remedy directly and not the right to recover." *Id.* at 340. Accordingly, although the Second Operating Agreement provides that it will be governed by Georgia law, North Carolina's statutes of limitations will be applied to Plaintiff's claims.

24. In their first claim for relief, Plaintiff seeks a declaratory judgment pursuant to N.C.G.S. § 1-253, *et seq.*, including but not limited to the following:

a. That Plaintiff holds a 23% ownership interest in JBS.
b. That following the death of Mr. Lenihan on or about February 18, 2023, Plaintiff became the sole member of JBS.
c. That, as a matter of law, a vote must be taken to appoint a new manager of JBS.
d. That any acts taken for or on behalf of JBS after the death of Mr. Lenihan are invalid and void because there was no manager in place to take such actions and bind the company.
e. That, as a matter of law, a vote must be taken to determine if new members can be admitted to JBS.
f. That Plaintiff's interests were not properly determined, acknowledged or protected during the distribution of funds from the sale of the Project.
g. That Plaintiff is entitled to his share of funds distributed from the sale of the Project.
h. That the transfer of membership interests to Celtic through the settlement agreement was unauthorized and is invalid, or to the extent it was valid, that it does not impact or dilute Plaintiff's membership interests.[35]

25. Defendants contend that "Plaintiff's claims accrued more than six years ago and are barred by the three-year statute of limitations."[36] Specifically, Defendants argue that "Plaintiff seeks to assert rights arising out of an operating agreement and, therefore, the three-year statute of limitations governing breach of contract actions applies."[37]

*Substantive Rights Plaintiff Seeks to Enforce*

26. In deciding which statute of limitations should be applied to a declaratory judgment claim, the Court is "guided by the principle that the statute of limitations is not determined by the remedy sought, but by the substantive right asserted by

---

[35] (Am. Compl. ¶ 70.)

[36] (Br. Supp. Def.'s Mot. J. Pleadings [hereinafter "Def.'s Br."] 7, ECF No. 21.)

[37] (Def.'s Br. 7.)

plaintiffs." *Baars v. Campbell Univ., Inc.*, 148 N.C. App. 408, 414 (2002) (concluding that the substantive rights at issue were governed by a three-year statute of limitations period as opposed to a 10-year statute of limitations period for what the plaintiff classified as a constructive fraud claim); *see also Penley v. Penley*, 65 N.C. App. 711, 723 (1984) (the "substance" of the claim controls over the "form" of the claim in determining the applicable statute of limitations), *rev'd on other grounds*, 314 N.C. 1 (1985); *Ludlum v. State*, 227 N.C. App. 92, 95 (2013) (holding that "[b]ecause plaintiff waited too long to file his claim [based on a contract], he is barred from a determination that he is owed any benefits at all [pursuant to that contract]" under his declaratory judgment claim). Since Plaintiff's declaratory judgment claim seeks a determination of contract rights, the three-year statute of limitations for breach of contract applies.

27. Claims that arise from operating agreements generally are substantive contract actions which are subject to a three-year limitations period. In *Chisum v. Campagna*, the plaintiff sought a declaration that he held a membership interest in an LLC and was entitled to distributions despite the LLC's stance that his membership interest had been extinguished. *Chisum v. Campagna*, 2018 NCBC LEXIS 78, at *12 (N.C. Super. Ct. July 27, 2018), *rev'd in part on other grounds*, 376 N.C. 680 (2021). This Court found that the *Chisum* plaintiff's substantive rights that he sought "to vindicate through declaratory judgment ar[o]se from Operating Agreements," and accordingly his claim was governed by the three-year statute of limitations for contract actions. *Id.* at *13.

28. Here, Defendants argue that the entirety of the relief Plaintiff seeks in his first claim is rooted in purported substantive rights that arise solely out of the Second Operating Agreement and Plaintiff's purported membership in or the management of JBS.[38] The Second Operating Agreement is a contract, under which Plaintiff's purported substantive rights are created and available. *See N.C. State Bar v. Merrell*, 243 N.C. App. 356, 370 (2015) ("An operating agreement is also a contract.").[39]

29. Plaintiff also acknowledges that the matter before the Court for resolution is rooted in and arises from the Second Operating Agreement. Specifically, Plaintiff alleges that under the Agreement he would acquire a 23% membership interest in JBS upon payment of the $5,000 in cash capital contribution and that, upon information and belief, Plaintiff paid the capital contribution required through deductions JBS owed Plaintiff between 1 July 2013 through 1 November 2013.[40] Neither Plaintiff's Amended Complaint nor his brief in opposition to Defendants' Motion identifies any other source or basis from which the substantive rights Plaintiff seeks to enforce through a declaratory judgment emanate. Like the plaintiff in *Chisum*, the "substantive rights" Plaintiff seeks to vindicate in his declaratory judgment claim arise from a contract.[41] *Chisum*, 2018 NCBC LEXIS 78, at *13.

---

[38] (Def.'s Br. 9.)

[39] (*See* Second Operating Agreement.)

[40] (Am. Resp. Br. Def.'s Mot. J. Pleadings [hereinafter "Pl.'s Br."] 15, ECF No. 25; Am. Compl. ¶¶ 20–24.)

[41] (Def.'s Br. 8–9.)

*Accrual of Plaintiff's Claims*

30.   Aside from the character of the claim, determining the claim's accrual date is critical in adjudicating whether Plaintiff's first claim is barred by the statute of limitations for contract actions. "A cause of action generally accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Acts Ret.-Life Communities, Inc. v. Town of Columbus*, 248 N.C. App. 456, 459 (2016) (quoting *Penley v. Penley*, 314 N.C. 1, 20 (1985)). For contract claims, the right to sue arises at the time of the breach. *Ludlum,* N.C. App. at 94.

31.   Here, Defendants contend that Plaintiff's claims accrued *at the very latest* when JBS notified Plaintiff through the Letter to Hughes dated 15 April 2019 that Plaintiff had failed to make the required $5,000 in cash capital contribution and thus his ownership in JBS was "currently 0%," and that JBS no longer considered him a member of JBS.[42] Defendants submit that *at that point* Plaintiff knew or should have known of a right of action against JBS over his claim that he always was and remained a 23% member of JBS.[43] Moreover, Defendants point out that Plaintiff's counsel crystalized the parties' dispute over Plaintiff's purported 23% membership in JBS no later than May 2019, when, by email to JBS' counsel, Plaintiff's counsel expressly responded to Lenihan's counsel and stated, "I hope that your client will get to the point of being ready to do mutual releases and sever all remaining business ties between our clients so that they can each move on. It is my belief that would be

---

[42] (Def.'s Br. 11; Letter to Hughes.)

[43] (Def.'s Br. 11.)

the best resolution for both."[44]  Plaintiff could have filed suit within three years of his counsel's May 2019 acknowledgment of JBS' stated position in April 2019 that as of that time Plaintiff possessed a zero percent ownership in JBS and was not a member of JBS.  Instead, Plaintiff filed this suit almost six years later in February 2025.

32.    Plaintiff responds to JBS' contention by claiming that the May 2019 email was a "random condensed email thread with no context between Plaintiff and Lenihan's former counsel" without a further rebuttal.[45]  Plaintiff also argues that the Letter to Hughes dated 15 April 2019 fails to comply with the notice requirements set forth in the Second Operating Agreement.[46]  Using these two points as anchors, Plaintiff contends that his claims accrued within a three-year limitations period beginning either in August 2022 with the Loray Project sale or in September 2023 when Plaintiff's counsel reached out to Trustee and Firm regarding Plaintiff's membership status.[47]

33.    Critically, Defendants highlight that it was Plaintiff himself who provided context to the email thread and alleged *in his own Amended Complaint* that "[i]n April of 2019, Lenihan . . . assert[ed] that Plaintiff failed to make the required capital contribution and thus was not a Member of JBS."[48]  Defendants also posit that

---

[44] (Hughes Email.)

[45] (Pl.'s Br. 18.)

[46] (Pl.'s Br. 18.)

[47] (Pl.'s Br. 19.)

[48] (Am. Compl. ¶ 88; Def.'s Br. 11–12.)

Plaintiff conflates the Second Operating Agreement's contractual notice provision with the statute of limitations and that Defendants' compliance with notice requirements is immaterial to the issue at hand.[49]  Putting aside the parties' differences over notice, the statute of limitations began to run when Plaintiff "knew or should have known" there was a breach of the Second Operating Agreement. *Chisum v. Campagna*, 376 N.C. 680, 720 (2021).

34.    The Court concludes that Plaintiff's contract-based causes of action against Defendants accrued and the statute of limitations began to run in April 2019 with the Letter to Hughes.  Plaintiff's first claim for relief is barred by the three-year statute of limitations governing contract actions.  N.C.G.S. § 1-52(1).  Accordingly, the Court **GRANTS** the Motion with respect to this claim.[50]

---

[49] (Def.'s Br. 4 n. 3.)

[50] The Court finds unavailing Plaintiff's arguments that Defendants should be equitably estopped from asserting a statute of limitations defense.  Plaintiff does not assert equitable estoppel as an affirmative cause of action.  Rather, Plaintiff's lone allegation on the face of his Amended Complaint is that "Lenihan had complete control over monthly allocations and represented to Plaintiff that his distribution was paid by deducting $1,000 from his distribution between July through November 2013.  Therefore, Estate and JBS should be equitably estopped from alleging otherwise." (Am. Compl. ¶ 89.)  Defendants submit that Plaintiff knew or should have known of a right of action against JBS regarding his alleged 23% membership interest in JBS upon Plaintiff's receipt of the Hughes Letter in April 2019 and his counsel's confirmation of the Hughes Letter via the Hughes Email in May 2019.  Nonetheless, Plaintiff filed his lawsuit in February 2025.  North Carolina law makes clear that "[a] party cannot rely on equitable estoppel if it 'was put on inquiry as to the truth and had available the means for ascertaining it.'" *Wade S. Dunbar Ins. Agency, Inc. v. Barber*, 147 N.C. App. 463, 470 (2001) (quoting *Hawkins v. M. & J. Fin. Corp.*, 238 N.C. 174, 179 (1953)).  The Court concludes, in these circumstances, that equitable estoppel does not apply.

## Constructive Trust as to the Escrow Funds

35. In his second claim for relief, Plaintiff seeks a constructive trust over all funds and proceeds that are the "rightful property of Plaintiff or JBS."[51]

36. Claims for constructive trusts are governed by a ten-year statute of limitations. *See Tyson v. North Carolina Nat'l Bank*, 305 N.C. 136, 141 (1982); *Guy v. Guy*, 104 N.C. App. 753, 755 (1991) (citing N.C.G.S. § 1-56). However, as observed above, "the statute of limitations is not determined by the remedy sought, but by the substantive right asserted by plaintiffs." *Baars,* 148 N.C. App. at 414. Claims that arise from operating agreements are substantively contract actions which are subject to a three-year limitations period. *Chisum*, 2018 NCBC LEXIS 78, at *13.

37. Here, Defendants contend that Plaintiff's constructive trust claim as to escrow funds also arises under the Second Operating Agreement and, therefore, is substantively a breach of contract action dressed as a constructive trust claim.[52] Defendants observe, relying primarily on *Baars* and *Chisum,* that Plaintiff's claim is clearly founded on the Second Operating Agreement, as Plaintiff seeks the imposition of a constructive trust over his alleged entitlement to his or JBS funds "until a determination of the management and membership of JBS is determined."[53]

---

[51] (Am. Compl. ¶¶ 71–75.)

[52] (Def.'s Br. 9.)

[53] (Am. Compl. ¶¶ 63–75.)

38.     Plaintiff's disagreement with Defendants' analysis and his recitation to ten-year statute of limitations periods for tort-based actions are insufficient to sustain the constructive trust claim.[54]

39.     Plaintiff possesses no legal entitlement to JBS funds or proceeds of those funds if he is not a member of JBS.  Plaintiff's asserted right to a 23% membership interest in JBS is perforce a substantive right that arises out of and is contingent on the Second Operating Agreement.  Plaintiff's right to sue accrued and the three-year statute of limitations began to run in April 2019 because Plaintiff "knew or should have known" of JBS' alleged breach.[55]  *Chisum*, 376 N.C. at 720.

40.     A constructive trust is a remedy, not a claim for relief.  "[A] constructive trust is not a standalone claim for relief or cause of action." *LLG-NRMH, LLC v. N. Riverfront Marina & Hotel, LLLP*, 2018 NCBC LEXIS 105, at *14 (N.C. Super. Ct. Oct. 9, 2018) (citing *Weatherford v. Keenan*, 128 N.C. App. 178, 179 (1997)). Accordingly, the Court will grant Defendants' Motion to the extent it seeks dismissal of Plaintiff's purported assertion of a cause of action for a constructive trust.

41.     Therefore, the Court concludes that Plaintiff's second claim for relief is time-barred by the statute of limitations period for breach of contract actions.  Accordingly, the Court **GRANTS** the Motion with respect to this claim.

---

[54] (*See* Pl.'s Br. 15–16.)

[55] (Reply Br. Supp. Def.'s Mot. J. Pleadings [hereinafter "Def.'s Reply Br."] 3, ECF No. 26.)

Judicial Dissolution of Defendant JBS

42.     In his third claim for relief, Plaintiff seeks a judicial dissolution of JBS.  He contends that JBS cannot continue its stated mission, there are disputes to the ownership and management of the company, and it is no longer reasonably practicable to conduct JBS' business in accordance with the Second Operating Agreement and applicable law.[56]  Plaintiff seeks judicial dissolution of JBS under Georgia law, specifically O.C.G.A. § 14-11-603.

43.     Defendants seek dismissal of Plaintiff's third claim, contending that Plaintiff is not a member of JBS and therefore lacks standing to seek judicial dissolution of JBS.[57]

44.     As an initial matter, no party addresses whether this Court possesses subject matter jurisdiction to judicially dissolve JBS.  A court must have subject matter jurisdiction to exercise authority over a case or controversy.  *See Harris v. Pembaur*, 84 N.C. App. 666, 667 (1987).  The absence of subject matter jurisdiction requires dismissal.  *See* N.C. R. Civ. P. 12(h)(3).  In deciding whether jurisdiction exists, the court may consider matters outside the pleadings.  *See Tart v. Walker*, 38 N.C. App. 500, 502 (1978).

45.     This Court has held that "[j]udicial dissolution of entities created under, and granted substantial contractual freedom by, the laws of one state should be accomplished by a decree of a court of that state."  *Camacho v. McCallum*, 2016 NCBC

---

[56] (Am. Compl. ¶¶ 76–83.)

[57] (Def.'s Br. 13.)

LEXIS 81, at *13–14 (N.C. Super. Ct. Oct. 25, 2016); *see also Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, *14–17 (N.C. Super. Ct. Oct. 2, 2017) (same). Courts in other jurisdictions have reached the same conclusion. *See, e.g., In re Raharney Capital, LLC v. Capital Stack LLC*, 138 A.D.3d 83, 25 N.Y.S.3d 217, 217–18 (N.Y. App. Div. 2016) (holding that New York courts lack jurisdiction to dissolve Delaware LLC); *Young v. JCR Petroleum, Inc.*, 188 W. Va. 280, 283 (W.Va. 1992) ("The existence of a corporation cannot be terminated except by some act of the sovereign power by which it was created."); *Mills v. Anderson*, 238 Mich. 643, 214 N.W. 221, 223 (Mich. 1927) ("It is textbook law that the courts of one State cannot dissolve a corporation created by another State.").

46. North Carolina's statutory regime governing limited liability companies demonstrates this principle. The North Carolina General Assembly has conferred jurisdiction on this Court to enter a decree of judicial dissolution as to domestic entities, but not as to foreign entities. For example, the *Camacho* Court explained that N.C.G.S. § "57D-6-02 applies only to an LLC formed under the North Carolina Act." 2016 NCBC LEXIS 81, at *11 (citing N.C.G.S. §§ 57D-1-03(13), (19)).

47. Plaintiff's Amended Complaint cites only to Georgia statutory law, O.C.G.A. § 14-11-603, concerning judicial dissolution, but this statute, enacted by another state, cannot confer jurisdiction on this Court. *See* O.C.G.A. § 14-11-603(a) (permitting Georgia "court[s]" to decree dissolution of a limited liability company). Because Georgia law "enables the formation" of limited liability companies and governs their stakeholders' rights and duties, a decree of judicial dissolution must

come, if at all, from the courts of that State. *Azure,* 2017 NCBC LEXIS 90, at \*16–17*; Camacho,* 2016 NCBC LEXIS 81, at \*13–14; *see also Valone v. Valone*, 80 Va. Cir. 45, 48 (Va. Cir. Ct. Jan. 20, 2010) (holding court lacked jurisdiction to dissolve foreign limited partnership).

48.   Plaintiff's and Defendants' filings do not address this legal principle or identify any authority conferring jurisdiction on this Court to dissolve a foreign limited liability company.

49.   Here, Plaintiff seeks judicial dissolution of JBS, a Georgia LLC. Only the Georgia courts may enter a decree dissolving JBS. Therefore, Plaintiff's judicial dissolution claim must be dismissed for lack of subject matter jurisdiction.

<u>Breach of Fiduciary Duty/Constructive Fraud Against Defendant Estate</u>

50.   In his fourth claim for relief, Plaintiff alleges that Lenihan as the Manager and majority member of JBS owed a fiduciary duty to Plaintiff as a member of JBS, which duty Lenihan violated "in April of 2019" by abusing his position of power as a majority Member and Manager of JBS relative to Plaintiff's efforts to "reclaim Plaintiff's 23% interest in JBS." Plaintiff further alleges that Lenihan concealed his fraud by wrongfully denying Plaintiff access to the corporate books and accounting records and depriving Plaintiff of his rightfully earned membership interest in JBS.[58]

51.   North Carolina and Georgia law both require that a plaintiff claiming breach of fiduciary duty must show (1) a fiduciary duty, (2) a breach of that duty, and (3) injury proximately caused by the alleged breach. *Sykes v. Health Network Sols., Inc.,*

---

[58] (Am. Compl. ¶¶ 84–96.)

372 N.C. 326, 339 (2019); *Niloy & Rohan, LLC v. Sechler*, 335 Ga. App. 507, 510 n.5 (2016).[59]

52. Under both North Carolina and Georgia law, a claim for constructive fraud requires a fiduciary or confidential relationship between the parties. *See, e.g.,* *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 620 (2012); *Thunderbolt Harbour Phase II Condo. Ass'n v. Ryan*, 326 Ga. App. 580, 581–82 (2014); *see also* O.C.G.A. § 23-2-58.

53. Defendants seek dismissal of Plaintiff's fourth claim, contending that Plaintiff's tort claim is barred by the applicable three-year statute of limitations governing contracts and the economic loss doctrine.[60] Plaintiff premises his constructive fraud claim on the same conduct as the fiduciary duty claim, so where appropriate, the Court will consider these claims together.

---

[59] Regarding choice of law, "[t]he internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs . . . because otherwise a corporation could be faced with conflicting demands." *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680 (2008). Under the internal affairs doctrine, claims for breach of fiduciary duty and constructive fraud are generally governed by the law of the state of incorporation. *Worley v. Moore*, 2017 NCBC LEXIS 15, *67 (N.C. Sup. Ct. Feb. 28, 2017) ("under the internal affairs doctrine, Delaware law applies to Plaintiffs' claims against Adams for breach of fiduciary duty and constructive fraud."). North Carolina's "traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim." *See Boudreau*, 322 N.C. at 335 ("For actions sounding in tort, the state where the injury occurred is considered the situs of the claim."); *Camacho*, 2016 NCBC LEXIS 81, at *17 (considering breach of fiduciary duty claim to sound in tort). The Court concludes that Plaintiff's tort-based claims are barred under North Carolina's three-year statute of limitations regardless of which state's law governs the substantive claims here.

[60] (Def.'s Br. 13.)

54. Regarding the statute of limitations, Defendants contend that it is the substantive rights Plaintiff seeks to enforce, not the label Plaintiff attaches to his claim, that governs the outcome here. And that because Plaintiff's claim for breach of fiduciary duty/constructive fraud similarly seeks to vindicate and exercise substantive rights Plaintiff believes he enjoys as a member of JBS—namely, a continuing membership interest in and distributions of profits from the LLC, and because those substantive rights arise under JBS' Second Operating Agreement, they are governed and barred by the three-year statute of limitations.[61]

55. The Amended Complaint's allegations make clear that Plaintiff's claim is rooted in and contingent on Plaintiff's status as a member of JBS and his membership interest in JBS.[62] Accordingly, the substantive rights that Plaintiff seeks to vindicate are contract rights subject to the three-year statute of limitations for contract actions.[63]

56. Regarding the economic loss doctrine, Defendants argue that Plaintiff's tort claim is barred by the doctrine. Injuries a plaintiff claims to have suffered by a defendant's failure to abide by an operating agreement can be barred by the economic loss rule under Georgia and North Carolina law. *See*, *e.g.*, *Gen. Elec., Co. v. Lowe's Home Ctrs., Inc.*, 279 Ga. 77, 78 (2005) ("The 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in

---

[61] (Def.'s Br. 8–10.)

[62] (Am. Compl. ¶¶ 88, 90.)

[63] (Def.'s Br. 8–10.)

contract and not in tort."); *Perry v. Frigi-Temp Frigeration, Inc.*, 2020 NCBC LEXIS 100, at *18 (N.C. Super. Ct. Sept. 3, 2020) (concluding economic loss rule barred breach of fiduciary duty claim where plaintiff sought enforcement of a right existing only in contract).

57.   In North Carolina, the economic loss doctrine prevents parties from impermissibly labeling or repackaging breach of contract claims as tort claims. *See Lord v. Customized Consulting Specialty, Inc.,* 182 N.C. App. 635, 639 (2007). "To state a viable claim in tort for conduct that is also alleged to be a breach of contract, 'a plaintiff must allege a duty owed to him by the defendant separate and distinct from any duty owed under a contract.'" *Akzo Nobel Coatings, Inc. v. Rogers,* 2011 NCBC LEXIS 42, at *48 (N.C. Super. Ct. Nov. 3, 2011) (internal citations omitted); *see also Asheville Contracting Co. v. City of Wilson,* 62 N.C. App. 329, 342 (1983) (holding that a claim "must be grounded on a violation of a duty imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties."). Even though contracting parties may have fiduciary duties to counterparties that are separate and distinct from their contractual duties and thus may be enforceable in tort, the economic loss rule will bar the claim for breach of fiduciary duty if the fiduciary duty allegedly breached is a product of the parties' contract or the injury claimed is grounded in the subject matter of the parties' contract. *Perry*, 2020 NCBC LEXIS 100, at *17–18 (internal citations omitted).

58. Here, Plaintiff makes two main arguments that the economic loss rule does not apply. First, Plaintiff argues that a majority member's duty to minority members is a duty separate from those imposed by the Second Operating Agreement.[64] Second, Plaintiff argues that the "Independent Tort" exception prevents his claim for breach of fiduciary duty/constructive fraud from being barred by the economic loss rule.[65]

59. Plaintiff cites to *Vanguard* to support his first argument. The court in *Vanguard* found that it is "the imbalance of power inherent in the relationship between majority and minority member that gives rise to a fiduciary duty," and that the majority member owes a duty to not leverage its control against the minority member, if no other provision in the operating agreement disclaims the duty. *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at \*20–21 (N.C. Super. Ct. June 19, 2019). Plaintiff utilizes *Vanguard* to attempt to undercut Defendants' main argument that all of Plaintiff's claims arise from or are created by the Second Operating Agreement and thus are subject to the three-year statute of limitations for contract actions.[66] Plaintiff draws purported parallels between the instant case and *Vanguard* and even mentions that, under Georgia law, managing members of LLCs owe fiduciary duties to both the LLC and other company members that are independent from their contractual duties.[67] *Sechler,* 335 Ga. App. at 511.

---

[64] (Pl.'s Br. 8.)

[65] (Pl.'s Br. 11.)

[66] (*See* Pl.'s Br. 8.)

[67] This Court has applied the economic loss rule to fiduciary duty claims by minority shareholders even in closely held companies with an allegedly dominant majority member.

60. Defendants respond that Plaintiff "ignores that his claims are fundamentally contract claims," and that determining whether a fiduciary duty ever existed here is "a function of whether he is or ever was a member of JBS—which, again, turns on the contract."[68] Further, Defendants note that *Vanguard* does not address the economic loss rule and that the doctrine is not even mentioned in the decision.[69]

61. To support his second argument, Plaintiff attempts to distinguish *Perry* from the instant case. In *Perry*, the Court dismissed the plaintiff's breach of fiduciary duty claim because his right to a bonus was "created by and available only under Paragraph 17 of the Agreement." *Perry*, 2020 NCBC LEXIS 100, at *17–18. In other words, *Perry* affirms that the economic loss rule will bar tort claims for breach of fiduciary duty where the substantive rights sought to be enforced are found in a controlling operating agreement, which is a contract. While Plaintiff states that he seeks to enforce unspecified "overall membership rights" as opposed to rights available "under a clause of the Operating Agreement"[70] as in *Perry*, Defendants correctly observe that Plaintiff's alleged injury and damages, the wrongful denial of

---

*See, e.g.*, *Perry*, 2020 NCBC LEXIS 100, at *17–19 (rejecting Perry's attempt to evade the application of the economic loss rule by basing his claims on the fiduciary duty owed to him by the majority shareholder as opposed to his duties under the Agreement.)

[68] (Def.'s Reply Br. 7.)

[69] (Def.'s Reply Br. 8.)

[70] (Pl.'s Br. 12.)

his 23% membership interest as a member of JBS, is created by and available only under Section 3.2 of the Second Operating Agreement.[71]

62. In addition, Plaintiff contends that North Carolina courts have rarely applied the economic loss rule to fraud claims.[72] In turn, Defendants correctly counter that Plaintiff has not pleaded a fraud claim and that North Carolina courts apply the economic loss rule to constructive fraud claims based on alleged breaches of fiduciary duty.[73] *See Loray Mill Developers, LLC v. Camden Loray Mill Phase 1, LLC,* 2023 NCBC LEXIS 21, at \*44–46 (N.C. Super. Ct. Feb. 7, 2023); *see also Perry,* 2020 NCBC LEXIS 100, at \*18.

63. Here, the injury Plaintiff claims to have suffered was caused by Defendants' alleged failure to abide by the Second Operating Agreement. The rights Plaintiff seeks to vindicate are created by contract, and the remedy Plaintiff seeks to impose is defined by that same contract. Under North Carolina law, such a claim is barred by the economic loss rule. *See*, *e.g.*, *Wilkins v. Wachovia Corp.*, No. 5:10-CV-249, 2011 U.S. Dist. LEXIS 30896, at \*6 (E.D.N.C. Mar. 24, 2011) (applying North Carolina's economic loss rule to bar breach of fiduciary duty claims which arose "out of the duties in the . . . agreement and relate to contract performance"); *Haigh v. Superior Ins. Mgmt. Grp., Inc.*, 2017 NCBC LEXIS 100, at \*19 (N.C. Super. Ct. Oct. 24, 2017) (dismissing breach of fiduciary duty claim where alleged wrongdoing was "a result of

---

[71] (Def.'s Reply Br. 8.)

[72] (Pl.'s Br. 13.)

[73] (Def.'s Reply Br. 9; *See* Am. Compl.)

the parties' *contractual* relationship, not as a result of a fiduciary relationship" and would be "better resolved through contract principles, rather than general principles of fiduciary relationships" (emphasis in original)).

64. The outcome is the same under Georgia law. As under North Carolina law, Georgia law provides that "if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to [the contract], except in cases where the party would have a right of action . . . independently of the contract[.]" O.C.G.A. § 51-1-11(a). As discussed above, the alleged breaches of fiduciary duty here are based on Defendants' alleged breaches of the Second Operating Agreement—specific, identified duties which arise under that contract and not from any fiduciary relationship between the parties. As a result, Plaintiff's claims for breach of fiduciary duty and constructive fraud must be dismissed under both North Carolina and Georgia law to the extent they seek recovery for JBS' alleged breach of provisions of the Second Operating Agreement.

65. Because Plaintiff's breach of fiduciary duty/constructive fraud claims are fundamentally mislabeled contract claims, his alleged 23% membership interest in JBS as a member is created by and available only under Section 3.2 of the Second Operating Agreement, and North Carolina (and Georgia) courts apply the economic loss rule to bar breach of fiduciary/constructive fraud claims, the Court concludes that Plaintiff's fourth claim for relief is barred by the economic loss doctrine. Accordingly, the Court **GRANTS** the Motion with respect to this claim.

IV.

CONCLUSION

66.     Accordingly, for the reasons set forth above and in the exercise of its discretion, the Court hereby **GRANTS** Defendants' Motion for judgment on the pleadings and **ORDERS** that: (a) Plaintiff's claims for declaratory judgment and breach of fiduciary duty/constructive fraud are **DISMISSED**[74] with prejudice; (b) Plaintiff's claim for judicial dissolution of JBS is **DISMISSED** without prejudice; and (c) Plaintiff's claim for a constructive trust is **DISMISSED** with prejudice.

        **SO ORDERED**, this the 9th day of February 2026.


                                        /s/ A. Todd Brown
                                        A. Todd Brown
                                        Special Superior Court Judge
                                          for Complex Business Cases

---

[74] Dismissal with or without prejudice is in the Court's discretion.  *See First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013).